Vol. 118]          APRIL TERM, 1904.          121

Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, &c.

CASE 15—ACTION BY GEORGE L. WHIPPS AND WIFE AGAINST THE LOUIS-
VILLE, ANCHORAGE & PEWEE VALLEY ELECTRIC RY. CO. FOR DAM-
AGES FOR BREACH OF CONTRACT.

# Louisville, A. & P. V. Electric Ry. Co. v. Whipps, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS BRANCH,
FIRST DIVISION—JOHN S. JACKMAN, SPECIAL JUDGE

JUDGMENT FOR PLAINTIFFS. DEFENDANT APPEALS. REVERSED.
CONTRACT TO EFFECT LOCATION OF DEPOT—DAMAGES FOR BREACH—
EVIDENCE.

1. Where plaintiff conveyed a right of way through his land
   to defendant in consideration of its agreement to erect a depot
   on his land and stop its cars there, the measure of damages for
   its breach of the agreement is the difference between the market
   value of the residue of his land with and without the depot.
2. In an action for breach of defendant's agreement, in con-
   sideration of the right of way conveyed it, to erect a depot on
   plaintiff's land and stop its cars there, evidence of the prices for
   which other lands contiguous to his, and situated, like it, on the
   defendant's road, sold, and as to the advantages of plaintiff's
   land for business and suburban purposes, and also as to what
   value the location of the depot would give the land, is admissible.

D. W. SANDERS, O'NEAL & O'NEAL, AND W. B. THOMAS, AT-
TORNEYS FOR APPELLANT.

In asking a reversal of the judgment in this case we shall urge
in the main only two grounds:

1. The measure of damages fixed by the court is manifestly
improper.

2. Admission of improper and highly prejudicial evidence.

While there are other errors to which we shall call attention,
we will earnestly insist that the above errors are directly re-
sponsible for the palpably unjust verdict returned by the jury.

The record shows that the land taken for the depot is assessed
at less than $75 per acre; the evidence shows that the balance
of the tract was increased in value by the road, and yet the
jury, for less than an acre; when it is not claimed that the
slightest damage was done to the remaining tract, finds a verdict

122            KENTUCKY REPORTS.            [Vol. 118

              ·  Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, &c.

of $800.

### AUTHORITIES CITED.

Covington Short Route Transfer Co. v. Piel, 9 Ky. Law Rep., 665; L. & N. R. R. Co. v. Asher, 12 R., 815; Illinois Central Ry. Co. v. Smith, 22 R., 1655; L., St. L. & T. R. R. Co. v. Neafus, 93 Ky., 53; L., St. L. & T. Ry. Co. v. Taylor, 96 Ky., 241.

·KOHN, BAIRD & SPINDLE AND R. L. GREENE, ATTORNEYS FOR APPELLEES.

The contention made below was that the instructions were erroneous in fixing the measure of damages.

The instructions given follow exactly the cases of Railroad v. Neafus, 93 Ky., 53, and Railroad v. Taylor, 96 Ky., 241.

The issues in the pleadings were as to whether appellant had agreed to erect its depot at a certain point in consideration of the right of way conveyed, or whether the erection of the depot was conditioned upon appellees donating further land for its location and building it themselves.

These issues were submitted to the jury by appropriate instructions, and damages awarded for the breach of the contract.

The action is not for a condemnation of a right of way, but is one for a breach of contract under which appellant procured the right of way.

The best evidence of the value of land is the price at which other land of like kind, in the immediate vicinity, sells for.

### AUTHORITIES.

L. & N. R. R. v. Neafus, 93 Ky., 53; Rhorer on Railroads, vol. 2, 864; L. & T. R. R. v. Taylor, 96 Ky., 241; R. R. v. Clark, 121 Mo., 169 (25 S. W., 192); 57 Am. & Eng. R. Cas., 542; City of Paducah v. Allen, 23 R., 701 (67 S. W., 891).

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

This is an action to recover damages for a breach of contract. The appellant owns and operates an electric railroad from the city of Louisville to Pewee Valley, a distance of about 15 miles. It appears from the petition that the appellee, Min-

Vol. 118]　　　　　APRIL TERM, 1904.　　　　　123

Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, &c.

nie C. Whipps, owns 45 acres of land in Jefferson county, opposite the Lakeland depot of the Louisville & Nashville Railroad Company, from which she and her husband, the appellee George L. Whipps, conveyed to appellant, in fee simple, something near half a mile of right of way, 25 feet in width, for its roadbed, in consideration, as alleged, that the appellant would erect and maintain at Lakeland a depot or stopping point on the right of way conveyed, at a point opposite the depot of the Louisville & Nashville Railroad, which the appellant's road parallels. By the terms of the conveyance, appellant's road was to make a curve at the proposed depot location or stopping place, leaving a strip of ground between its road and the Louisville & Nashville Railroad, on which the appellees were to have the right to erect a storehouse and business place, as they thought such a location, between two roads carrying surburban traffic, would possess unusual advantages for business purposes. After the execution of this deed it was ascertained by appellant that it would be of detriment to it, in the operation of its road, to make this curve, and of decided advantage to have its road straightened, as at a point not far distant it had to climb an ascent so as to make an overhead crossing to the north side of the Louisville & Nashville Railroad, going into Anchorage. So, at the request of appellant, appellees consented that the road might be straightened, as by so doing appellant avoided some very heavy cutting through a hill on the appellees' property. It was, however, understood between the parties that this concession did not relieve the appellant of its undertaking to locate the depot or stopping place at a point just opposite the Lakeland depot of the Louisville & Nashville Railroad, and about the center of the appellees' land, and its location there was expected to add a value to the property both for business sites and for suburban residences.

124 KENTUCKY REPORTS. [Vol. 118

Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, &c.

Upon the completion of appellant's road, and for some days after its cars were in operation, it seems to have regularly stopped them at the point where the station was to be located. according to agreement; and lumber and materials were placed there by appellant, apparently with a view of erecting the depot at that point. But it was then concluded by appellant that it would be unable to carry out its contract with the appellees, because the Louisville & Nashville Railroad, whose property adjoins, would not grant it the right of a public crossing, for which reason appellant carried away its building material, and erected its depot a quarter of a mile east of the point agreed on, putting it at the corner of adjacent property, owned by Shallcross, where it is entered by the county road. After concluding to thus change the location of the depot, appellant would not suffer its trains to be stopped at the point on appellees' land where it had agreed to locate it, and the agreement as to the depot and stopping place was never performed. Therefore this action was instituted against appellant by appellees for the breach of the contract resulting from its nonperformance.

The answer of appellant denied the material averments of the petition, and, in addition, among other matters of defense, alleged that appellees not only donated the land for its right of way through their property, but also agreed to donate further land to it for a depot, and to erect thereon a depot for the use and benefit of appellant, and that appellant only agreed, on its part, to use the depot thus furnished by the appellees. An amended answer was tendered, but not allowed to be filed, which contained an offer upon the part of appellant to establish a stopping place at the point agreed if appellees would erect there a depot for its use, and make the same accessible to the public. We do not think it was an abuse of discretion for the lower court to refuse to

permit the amendment to be filed. The matter relied on therein was known to appellant when its original answer was filed, and no reason was shown why the amendment was not offered earlier.

The principal issues presented by the pleadings were as to whether the appellant had agreed to erect the depot at the point claimed by appellees in consideration of the right of way conveyed, or whether its erection was conditioned upon the appellees donating further land for the location of the depot, and themselves building it. These and other material issues seem to have been submitted to the jury under the proof heard, and under instructions given by the court, and they found in favor of appellees, assessing the damages for the breach of contract at the sum of $800.

Conceding that appellant was sincere in its tardy offer to yet make a stopping place at the point contended for by the appellees, if the latter would there erect for it a depot, and make it accessible to the public, no reason is perceived why such an offer should have authorized the lower court to take the case from the jury, as contended by appellant. That court could properly have done no more than to instruct the jury on that point, as it did, that, if such was the consideration for the conveyance of the right of way, they should find for the appellant. But upon the other hand, if the agreement was that appellant, in consideration of the conveyance of the right of way by appellees, was to erect the depot or establish a stopping place at the point claimed by appellees, they should find for them.

But we find that there are two other contentions relied upon by appellant for a reversal that are much more serious than the one indicted, viz.: (1) That the trial court erred as to the measure of damages in instructing the jury; (2) that the court also erred in the admission of evidence.

The following is the instruction given by the court on the measure of damages: "If the jury find their verdict for the plaintiff, they shall find for the plaintiff in such sum of money as they may believe, from the evidence, represents the fair and reasonable value of the land conveyed by the plaintiff to the defendant for the right of way at the time said conveyance was made, and in addition thereto such a further sum as they may believe from the evidence would represent the difference, if any, between what would have been the market value of the residue of the plaintiff's land, out of which said right of way was conveyed, if such stopping place had been established at the location mentioned in instruction No. 1, and the market value of said residue of land without said stopping place; the whole award not to exceed the sum of $3,000, the amount claimed in the petition. In determining the difference in value referred to herein, if there be such difference, the jury will not consider the profits, if any, which might have been made by the plaintiff in any business the plaintiff might have established at or near said stopping place, but the jury may consider the adaptation, if any, which the location of said stopping place, as in instruction No. 1, would have given plaintiff's land for business or other useful purposes, and thereby have enhanced its market value. If the jury find their verdict for the defendant, they shall so state, and no more." This instruction was evidently patterned after that approved by this court in the case of L. St. L. & T. R. R. Co. v. Neafus, 93 Ky., 53, 13 R., 951, 18 S. W., 1030. But after a careful examination of the authorities bearing upon the question, we have come to the conclusion that the measure of damages in that case, as well as in the one at bar, was not correctly announced.

In Sutherland on Damages, vol. 2, sec. 576, we find what we regard as the correct rule on this subject thus stated:

"A covenant by a railroad company, in consideration of the grant of the right of way through land, to erect a flag station convenient to the grantor's house; and to permit him to cultivate all the land granted which was not needed by the grantee, runs with the land, and binds the grantee's assignee, who has notice. The measure of damages for its breach is the difference between the value of the lands when suit is brought and what their value would have been, had all the stipulations in the contract been substantially performed, or, in other words, the additional value which would have accrued to the lands but for the breach. The covenant inured to the benefit of the grantor's adjoining land, and, if performed, would have increased its market value. This appreciation was within the legal, if not the actual, contemplation of the parties. Its loss was the natural and proximate result of the breach of the contract." Continuing the discussion, the learned author refers to a Pennsylvania case in which there was a breach of the contract to erect a depot, the erection of which was the principal consideration for the release of the right of way through the plaintiff's land. The trial court announced the damages to be the same as would have been awarded the owner if the land had been condemned. When the case reached the supreme court of the State, that court, in an opinion by Agnew, J., which is approved by Sutherland, said: "Instead, then, of the question being the difference in value of the land before and after the building of the road, considering all advantages and disadvantages to the owner, the question would be upon the additional value which would accrue to the plaintiff's land in the event of erecting such a depot as the contract called for. Under the contract, whatever specific advantages would accrue to the land from the adjacent depot and station would have to be added to the plaintiff's claim, for this

128        KENTUCKY REPORTS.        [Vol. 118

Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, &c.

would be his loss in case of a breach of the contract. While the profits of his business can not be added to his damages, for these are speculative and uncertain, the business advantages which constitute the characteristics of the land and give it value are not to be thrown out of consideration in determining the value of the land. Clearly, if the depot and station would make the plaintiff's land more valuable as a place of business, by bringing to it business it would not possess without them, they give greater value to the land to the extent of the increase by reason of their being placed there, and therefore fall within the scope of the contract."

In Sedgwick on Damages, vol. 2, sec. 630, it is said: "Where a railroad company breaks an agreement to build a station at any given place, the measure of damages is the enhanced value of the land, had the depot been erected." The rule announced in these two admirable works on Damages is in conflict with that stated in L., St. L. & T. R. R. Co. v. Neafus, supra, yet we think it both just and reasonable.

We think it would be neither reasonable nor just to allow appellees the value of the land conveyed by them to appellant for its roadbed, in addition to the value which would have accrued to the residue of their land by the building of the depot. The action is not one to recover the value of land which appellant has wrongfully appropriated to its use. In such case the damages recoverable would necessarily include the value of the land taken, as well as the injury that resulted to the residue of appellees' lands from such taking, without regard to any advantage that might have accrued thereto by the construction of the railroad. But here it is conceded that the land was conveyed appellant by the appellee, and the complaint of the latter is that there has been a failure of consideration—in other words, appellant has failed to erect a depot or establish a stopping place at an

agreed point in front of appellees' property, as it under-
took to do, as compensation to them for the right of way,
which failure constitutes a breach of the contract.

What induced appellees to convey the right of way to ap-
pellant? It was because the erection of a depot and the
stopping of its cars in front of their property would enhance
its vendible value. The depot was not built or the stopping
place established as agreed. Consequently the expected in-
crease in the value of appellees' land did not result, and by
this means they have been damaged. What, then, is the true
criterion of damages? It is such a sum as would represent
the difference, if any, as shown by the evidence, in what would
have been the fair market value of the residue of Minnie C.
Whipps' land, after the conveyance of the right of way, if
the depot or stopping place had been established at the
point on appellees' land agreed upon by the parties, and
the fair market value of such residue of land without the
depot or stopping place; the whole award not to exceed
$3,000, the sum claimed in the petition. And in so estimating
the damages the jury should not consider the profits, if any,
which might have been made by the appellee Minnie C.
Whipps in any business she might have established at or near
such depot or stopping place, but consider adaptation, if any,
which the location of the depot or stopping place at the point
mentioned would have given her land for business or other
useful purposes, and thereby have enhanced its market
value.

Certain evidence as to what prices other lands contiguous
to that of appellees,' and situated, like it, on the appellant's
roadway, sold for, and as to the advantages of appellees'
land for business and surburban purposes, and also as to
what value the location of a depot on her land at the point

130    KENTUCKY REPORTS.    [Vol. 118

Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, &c.

agreed on would give the land, was objected to by appellant, and it now complains of its admission. But such evidence has been declared by this court competent. In City of Paducah v. Allen (111 Ky., 361, 23 R., 701), 63 S. W., 981, it was said on this subject: "On the trial appellant offered to prove by various witnesses what adjoining properties of the same class and character had been sold for just before and since the location of the pest-house, it being thus attempted to prove that the market value of this property had not been impaired to that extent indicated by the opinion of appellees' witnesses. Of course, market value is the price at which an article sells in the market. This price is fixed by sales actually consummated. Such sales, when made under normal and fair conditions, are necessarily a better test of the market value than speculative opinions of witnesses, for truly here is where money talks.. . . We are of opinion that it was error in the trial court to reject the testimony above mentioned."

In Railway v. Clark, 121 Mo., 169, 25 S. W., 192, 906, 26 L. R. A., 751, the same character of evidence was held by the Supreme Court of Missouri to be competent. We are of opinion, therefore, that the evidence complained of by appellant was properly admitted by the trial court.

We are further of opinion that the only reversible error appearing in the record is that committed by the lower court in the instruction as to the measure of damages. And to the extent that they conflict with the views herein expressed, the cases of L., St. L. & T. R. R. Co. v. Neafus, 93 Ky., 53, 13 R., 951, 18 S. W., 1030, and L., St. L. & T. R. R. Co. v. Taylor, 96 Ky., 241, 16 R., 579, 28 S. W., 666, are hereby overruled.

For the error indicated, the judgment of the lower court

is reversed, and cause remanded, with directions to that court to grant appellant a new trial, and for further proceedings consistent with this opinion.