## Turpin v. Jones.

(Decided November 23, 1920.)

### Appeal from Lincoln Circuit Court.

1. Landlord and Tenant—Damages—Profits.—Conjectural profits cannot be recovered by a share-cropper of his landlord in an action for damages resulting from the latter's violation of a rent contract under which he was to cultivate land for a part of a crop to be raised thereon.

2.  Landlord and Tenant—Profits—Pleading.—Where, as in this case,
    the action for his share of the profits that might have been de-
    rived from the crop expected to be grown on the leased land,
    was brought by the share-cropper before the time for pitching
    the crop and immediately following the refusal of the landlord
    to surrender to him the possession of the land to be cultivated,
    the trial court properly held that its institution was premature;
    hence, the action of that court in sustaining a demurrer to the
    petition was not error.

J. N. SAUNDERS for appellant.

J. B. PAXTON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Lincoln circuit court sustaining a general demurrer filed by the appellee, J. B. Jones, to the petition of the appellant, M. C. Turpin, and, upon his failure to plead further dismissing the petition. The action was one for the recovery of damages claimed by appellant for the alleged breach by appellee of a rent contract made by the parties, February 14, 1919, whereby the former leased of the latter eight acres of land to be cultivated by him that year in tobacco. According to the averments of the petition, the contract was that appellee was to furnish the land, the teams to prepare same, a suitable barn in which to house the crop and to advance to appellant, as a loan secured by a lien upon the crop, such money as appellant might need in cultivating and preparing the crop for market; the appellant to furnish all the labor in the preparation of the land, the planting, cultivating, gathering, cutting the crop and preparing it for market, the gross proceeds of the crop to be equally divided between them. The petition further alleged that appellant attempted on March 10, 12, and 13, 1919, to enter upon the execution of his part of the contract, but that appellee refused to allow him to do so or to perform the contract and thereby breached its terms, whereby appellant was damaged in the sum of $860.00. The petition also alleges that appellant's half of the market value of the crop which he, by ordinarily good husbandry, could have raised on the leased land in the year 1919 less the cost of raising the whole crop, including his services as part of the cost, would have been $860.00, the sum sued for.

The suit was instituted March 15, 1919, a month after the contract was made and before the crop could have

been planted or even the ground burned for a plant bed in which to produce the tobacco plants. It will be observed that the damages alleged and sought to be recovered are purely speculative, that is, conjectural profits, that might or could have been made by appellant, if he had been permitted under the contract to pitch and produce the crop of tobacco in the year 1919. The circuit court sustained the demurrer to the petition upon the grounds that the damages claimed being purely conjectural were not recoverable; and that the action was prematurely brought.

In our opinion the correctness of these conclusions cannot be questioned. Manifestly, it was impossible when the suit was filed, to intelligently ascertain, or even approximate, what damage the appellant had sustained; and as the appellant's petition does not allege actual damage, but only seeks to recover conjectural profits, the action was properly terminated by the sustaining of the demurrer to the petition. The rule of law applicable to the state of case here presented was long ago announced in Owens v. Durham, 5 Dana, 536, in which it was held that where a share cropper is deprived of his portion of the crop by his landlord's violation of the lease contract, the measure of damages is the value of his portion when the crop is gathered and secured in the year that it is grown. The court in stating the rule said: "If Owens was guilty of a breach of covenant in not making the proper allotments when the crop was gathered, or when Durham's service was terminated, Durham was entitled to the value of his interest *at that time.* And as his right was then perfect, he cannot be entitled to the value at any other time."

In Smith v. Phillips, 16 R. 615, which was an action quite similar to this, the only proof of damages was conjectural profits, for which reason the jury was directed to find for the defendant. In the opinion the court said:

"Appellant's testimony did not show actual damage, but conjectural profits. Conjectural profits expected from the use of premises cannot be recovered. This is not the criterion of damages. . . . It is quite different in a case where you seek to estimate the profits in cultivating a farm as in this case. The season is an important factor in the calculation. The crop may be large or small, dependent largely upon the season. The price of the products of the farm may be high or low, not within the power of man to tell. There is no basis from

which any calculation can be made as to the profits, if any, that may be realized on such an undertaking. An estimate must necessarily be conjectural. The amount of profits, if there should be any realized, cannot even be approximated." Cundiff v. Cundiff, 18 R. 1059; Kelley v. Davis, 9 R. 647.

A different rule to that stated controls in a case where there is a violation by the landlord of a contract in which rent in money is to be paid, as in such case suit may be instituted by the lessee immediately upon the breach of the contract, the measure of damages being the difference between the contract price as to rent and the actual rental value of the land, which may as easily be ascertained as its sale value. But when the tenant is to receive a part of the crop, as in the instant case, there is no basis whatever on which to estimate before the maturing of the crop, the damages resulting from the breach of the contract, and any attempt to do so can only amount to an effort to recover conjectural profits. On the other hand if there is a postponement of the action until the crop is produced and ready for market the means of more accurately arriving at the amount of the damages sustained can be more definitely known and applied, for it will then be known whether there was a drouth or favorable season for producing the crop, the character of crops raised in the vicinity of the land, and, also, the value on the market of the crops produced.

We do not understand that the case of Adams v. Hambrick, 161 Ky. 797, relied on by appellant, is not in harmony with the views herein expressed. While the opinion in that case does not show the time of the filing of the action, it is patent from the conclusions therein expressed that it must have been brought after the crop involved had been produced and was ready for market, as it is therein held that the measure of the tenant's damage was half of the market value of the crop, which of course could not have been arrived at in advance of the completion of the crop.

It follows from what has been said that there was no error in the action of the court in directing a verdict for the appellee, wherefore the judgment is affirmed.