## Hines, Director General of Railroads v. Denny.

(Decided February 8, 1921.)

### Appeal from Pulaski Circuit Court.

1. Damages—Conjectural or Speculative Damages.—Damages which are so conjectural or speculative as to be incapable of approximately accurate ascertainment or so remote and contingent that the parties affected could not reasonably have contemplated they would result, are not recoverable.

2. Railroads—Action for Recovery of Value of Sample Cases and Samples.—In an action by a traveling salesman to recover of a railroad company damages for the loss, through its negligence, of his sample cases and samples, the recovery may include the reasonable value of the property lost, and, if working on a salary, such loss thereof, if any, as he may have sustained by being deprived of the sample cases and samples and while unable by reasonable effort and care to replace them. But he will not be entitled to recover, by way of damages, for any loss of commissions on sales of merchandize he might have made during the time he was deprived of the sample cases and samples, as such damages are purely conjectural and speculative.

WM. and B. L. WADDLE for appellant.

H. C. KENNEDY and WM. CATRON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Granting appeal, affirming in part and reversing in part.

The appellee, A. S. Denny, a traveling salesman of Isaac Fallers Sons Company of Cincinnati, Ohio, jobbers of men's and ladies' furnishing goods, instituted this action in the Pulaski circuit court against the appellant,

Walker D. Hines, then Director General of Railroads in the United States, to recover damages resulting from the alleged loss of certain sample cases and contents, owned and used by appellee in his business as traveling salesman, alleged to have been delivered to the Cincinnati, New Orleans and Texas Pacific Railroad Company at its depot in the city of Somerset, Kentucky, for shipment as baggage. It was alleged in the petition that the sample cases and contents were lost by and through the negligence of the railroad company and its servants; that the lost property was reasonably worth $156.55, and it took appellee two months to replace same with other like sample cases and samples, during which time he was unable to engage in his usual or other business and made no sales of merchandize; and that but for such negligence of the railroad company and its servants, he would have sold during the two months of lost time to retail merchants of the territory traveled by him merchandize amounting to $10,000.00, upon which he would have realized under the contract he had with his employer commissions, over and above his traveling expenses, aggregating $400.00, and for this amount and $156.55, the alleged value of the sample cases and contents, all claimed by way of damages, judgment was prayed in the petition.

The appellant's answer fully traversed the allegations of the petition, and on the issues thereby made the case went to trial, which resulted in a verdict awarding appellee damages of $156.55, for the value of the sample cases and contents lost, and $300.00 for his loss of commissions on sales of merchandize claimed to have been caused thereby. The separate finding as to the first item of damages was directed by an instruction of the court, but that as to the second item of damages was left to the decision of the jury under another instruction defining the measure of such damages, if any were allowed, and telling them to determine from the evidence whether same or any part thereof should be allowed. Appellant duly filed in the court below a motion and grounds for a new trial, but the motion was overruled and judgment entered upon the verdict in conformity with its findings. Complaining of the judgment and desiring a review thereof by this court, the appellant, as required by law where the amount in controversy is as much as $200.00, and less than $500.00, filed therein a transcript of the record and with it a motion that he be granted an appeal.

It seems to be conceded by counsel for appellant that so much of the verdict of the jury as allowed appellee damages of $156.55, as the reasonable value of his lost sample cases and samples, should not be disturbed. So this feature of the case will not be discussed further than to say, that as the delivery of the property in question to the Cincinnati, New Orleans and Texas Pacific Railroad Company at Somerset for shipment, its loss by the latter and that its value reasonably amounted to $156.55, were shown by the uncontradicted testimony of the appellee, the only witness testifying on the trial, the correctness of the verdict in awarding him the item of $156.55, and that of the court's instruction directing its allowance by the jury, cannot be questioned.

It is, however, insisted for appellant that the recovery by appellee of damages for any loss of commissions on sales of merchandize it was claimed he might or could have made during the time he was deprived of his samples, was unauthorized by law because such damages are wholly conjectural or speculative; and that if the recovery of such damages should in any state of case be permitted, there was not sufficient proof thereof in the instant case to authorize the submission of the question to the jury. Hence, it is argued by counsel that the trial court erred in submitting that issue to the jury, and, also, in giving instruction No. 2 by which they were permitted to determine appellee's right to such damages and illegally allow him same to the amount of $300.00.

The instruction was objected to by appellant's counsel and the action of the court in overruling the objection and giving the instruction excepted to by them. They did not, however, as properly they might have done, ask a formal instruction peremptorily directing a verdict for the appellant as to the damages claimed for loss of commissions, but offered one of substantially the same legal effect, which, if given by the court and followed by the jury, necessarily would have induced a verdict relieving the appellant of such damages. The court refused the instruction, however, to which appellant took an exception, and in view of the action of counsel refered to, it cannot be claimed that appellant is estopped to complain, on appeal, that the action of the trial court in submitting to the decision of the jury appellee's claim to damages for loss of commissions, is reversible error.

Before taking up the question whether or not contemplated profits, such as were allowed appellee in this case

by way of damages, are recoverable, it will be necessary to consider the evidence introduced in support of his claim to such damages. It appears from the evidence, furnished by the testimony of appellee alone, that the territory allotted him by his employer, within which to sell the merchandize, embraced Pulaski and about four other counties, through which he traveled during certain seasons of each year making sales to retail merchants, effected by exhibiting his samples to the purchasers, agreeing with them upon prices and taking their orders for such goods as they agreed to purchase and later receive by shipment from Isaac Fallers Sons Company from Cincinnati after the orders were received and accepted by the latter; that appellee was acquainted with the retail merchants of the territory in question and had an established trade therein, and that during the two months deprivation of his samples, caused by their loss at the hands of appellant's agents, he would or could, had they been in his possession, reasonably have sold to the retail merchants of his territory merchandize amounting to $10,000.00, upon which he would have received, under his contract of employment with Isaac Fallers Sons & Company, a commission of 7½ per cent, amounting to $750.00, after deducting from which his traveling expenses for the same time, $350.00, he would have realized a net profit of $400.00.

An analysis of the evidence will demonstrate the vagueness of that part of it bearing on the appellee's claim of damages for the loss of commissions. Notwithstanding his claim of having an established trade in the territory traveled by him, he failed to give the names of the retail merchant customers or any of them therein to whom he would, or could with reasonable certainty, have sold goods during the two months he was deprived of his samples; nor did he claim to have been informed or assured by any merchant of his territory that a visit from him within that time, attended by an exhibition of his samples, would result in a purchase of goods from him by such merchant. It will also be seen that the evidence fails to show what quality or amount of goods appellee customarily sold to each or any of the several merchants in his territory during any other like season and within such time as he was deprived of his samples; nor was any merchant of the territory called on to testify whether, if visited by appellee and shown his samples at any time within the two months succeeding their loss,

he would have given an order for merchandize. Furthermore, his estimate of the amount of merchandize he could have sold while deprived of his samples, was based on his estimate of the amount he sold in the succeeding year, 1919, without any proof from him or others that trade conditions that year in the territory traveled by him were the same as the year before, or what differences, if any there were, between the styles, prices of, or demand for the lines of merchandize sold by appellee in the year 1919 and those he claimed to have been prevented, by the loss of his samples, from selling in 1918. All that has been said of the uncertainty of the evidence respecting sales of goods appellee claimed would have been made by him but for the loss of his samples, applies with equal force to his testimony as to the amount of his traveling expenses, to be deducted from commissions, for the time he was deprived of the samples and might have been earning them, for instead of furnishing an itemized statement of these expenses or giving them by way of a daily average, he contented himself with a lump estimate by fixing them at $350.00.

It is apparent from what has been said of the proof in this case that the damages claimed by appellee for the loss of commissions were and are too remote and conjectural to be accurately, or even approximately, ascertained. If appellee had been working upon a salary, instead of a commission, the damages claimed as resulting to his business from the loss of his samples could have been certainly ascertained, for in such case the measure of damages would have been the loss of his salary during the time he was deprived of the samples, which easily was susceptible of proof; but where, as in the instant case, the damages are claimed to have resulted from the loss of commissions on anticipated sales of merchandize to be made by personal effort in a particular territory, it is difficult, if not impossible, by any sort of proof to show the damages otherwise than conjectural or speculative, and therefore not recoverable. This is necessarily so because the number and amount of such sales depend upon many contingencies, such as the suitableness of the goods to the market, fluctuations of trade and the skill, energy and industry of the traveling salesman. In addition to the numerous elements of uncertainty in the way of a correct ascertainment of such damages, referred to, is yet another arising out of a usage of commercial trade as appertaining to the business of the traveling sales-

man, which is that his sales of merchandize are made subject to the approval of his employers, for he makes no personal deliveries of the goods he sells and receives no money for them, but takes orders from the purchasers for them, which he forwards to his employer for the latter's acceptance or rejection. If an order is accepted by the employer the goods are shipped to the purchaser and the money therefor sent or paid by the purchaser to the employer as provided by the contract of sale. On the other hand, if the order is rejected by the employer, the giver of same is advised of that fact and the goods ordered are not shipped to him. It does not appear from appellee's testimony what proportion, if any, of the orders he was accustomed to take for goods were rejected each or any season by his employer, or that his commissions on sales of goods he reasonably could have made, but for the loss of his samples, would not have been lessened by his employer's rejections of such orders from customers. The legal effect of the usage of trade referred to as related to the business of the traveling salesman and his customers, has repeatedly been passed on by this court. In considering it in Nolin Milling Co. v. White Grocery Co., 168 Ky. 417, we in part, said:

"In dealing with a drummer one cannot assume that he has implied authority to make an absolute sale of the article or commodity he handles; but must know that in the absence of special authority to do so, he can do no more than merely solicit and transmit the order and leave to his principal the right to accept or reject it, the approval of the latter being necessary to complete the sale. Appellee has not shown that appellant's drummer, Chandler, had special authority to bind his principal, and in the absence of such showing, the writing given its president and manager by Chandler is no more evidence of a completed contract than would be a mere order for the flour written in the form customarily employed by drummers in such transactions; and in no event can it be considered as anything more than a tentative sale, which could not become binding unless accepted or approved by appellant, which was never done."

It will be found that the following additional authorities hold to the same view of the law as to such contracts expressed in the opinion, *supra*. Courtney Shoe Co. v. Curd and Son, 142 Ky. 219; Charles Brown Grocery Co. v. Beckett, etc., 22 R. 393; Seven Hills Chautauqua Co.

v. Chase Bros. Co., 26 R. 334; John Mathews Apparatus Co. v. Reuz and Henry, 22 R. 1528.

The law regarding the recovery of damages for loss of commissions or future profit, whether resulting from a breach of contract or arising out of a tort, is also well settled in this, as in other jurisdictions. In all cases the damages claimed must be such as are directly and proximately caused by the breach or injury, and also such as in the contemplation of the parties could reasonably have been anticipated. Moreover the damages claimed should be capable of being definitely ascertained. Where they are so speculative and dependent upon numerous and changing contingencies that their amount is not susceptible of actual proof, no recovery can be had. 13 C. Y. C. 36. As already intimated, the evidence in this case as to the loss of commissions by appellee is based upon too many contingencies, is too general and indefinite to admit of an approximately accurate ascertainment of the character or amount of the damages claimed and also wholly insufficient to show that they were or are of such a character as could have been contemplated by the parties; nor was it made to appear that the servant of the railroad company who received the appellee's baggage or any of them who had it in charge or by whom it was lost, knew that it contained samples or of the use appellee intended to make of them.

We frequently have held that damages of the character here claimed are purely conjectural and speculative and hence not recoverable. In Weick v. Dougherty, 28 R. 930, we approved the plaintiff's recovery of the defendant, by way of damages, the value of his wagon and contents, which the latter negligently allowed to be destroyed by fire while in his livery stable, but condemned the action of the trial court in permitting the plaintiff also to recover of the defendant damages for the loss of profits in his business as a huckster, claimed to have been caused by the destruction of the wagon; it being held that such damages were too remote and speculative to be the subject of judicial ascertainment. In Tucker v. Horn, 31 R. 806, the plaintiff, a jockey, was employed by the defendant as a race rider, the contract of employment providing that he might, when not riding for the defendant, accept outside mounts and receive the wages therefor. Claiming that the contract had been breached by the defendant, the plaintiff sought by suit to recover of him damages therefor, including wages, it was claimed,

he would have made from outside mounts had the contract not been breached. We held that such damages could not be recovered by the plaintiff because too remote and speculative, and in so declaring, in part, said: "It seems to us unreasonable that a jury should be allowed to say at haphazard, who might or might not have employed the infant plaintiff to ride their races during the contract period. Undoubtedly it is true that jockeys whose employers have no entry in a given race are sometimes engaged by other owners who are in need of riders, but that this will happen is entirely problematical."

A very recent case analogous in principle to the instant case is that of Turpin v. Jones, 189 Ky. 635. In this case we held that a share cropper in an action for damages brought against his landlord before the time for pitching the crop and immediately following the refusal of the landlord to surrender to his possession as a renter for the year, the land to be cultivated by him could not recover of the landlord by way of damages, conjectural profits that he might realize from the cultivation of the land. The same conclusion on similar states of fact was also reached in the cases of Smith v. Philips, 16 R. 615, and Owens v. Durham, 5 Dana 536. In 8 Am and Eng. Ency Law, 624, (2nd Ed) it is said:

"It has been held that profits which might have been realized by an agent to sell goods on commission are too uncertain to be recoverable. The opinion of an agent selling on commission as to what sales he could probably have made, but for the breach of contract, does not sufficiently warrant the damages."

The following cases in other jurisdictions than ours sustain the above doctrine: Katz v. Cleveland Ry. Co., 91 N. Y. Supp. 720; Brigham v. Carlisle, 56 Ala. 243; Conheim v. Chicago Great Western Ry. Co., 124 Am. State Rep's 623. We are aware that cases may be found, one or two of which are cited by appellee, in which it was held that recovery might be had of lost profits, but in every such case the loss was in contemplation of the parties and the damages could be ascertained with reasonable certainty, neither of which conditions exists in the instant case.

If right in the conclusions we have reached, it follows that the trial court, instead of submitting to the jury the question of damages for loss to appellee of commissions as predicated in instruction No. 2, should have instructed them to return a verdict disallowing such dam-

ages; and because of this error, the judgment, in so far as it awards appellee such damages, is reversed and cause remanded with directions to set aside the verdict and judgment to that extent and grant appellant a new trial. But the judgment, in so far as it awards appellee damages for the value of the sample cases and samples, is affirmed.